The People of the State of Illinois ex rel. Edna O. Dahlin, Appellee, v. Horace I. Lepman et al., Appellants.

**Gen. No. 38,184.**

Opinion filed November 12, 1935.

OTTO KERNER, Attorney General, for appellants; WM. C. CLAUSEN and JOSEPH R. MUNIZZO, Assistant Attorneys General, of counsel.

ARTHUR L. ISRAEL, of Chicago, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Edna O. Dahlin filed her petition praying that a writ of mandamus issue directed to Horace I. Lepman, Superintendent of Foods and Dairies, Walter W. McLaughlin, Director of Agriculture, W. Emery Lancaster, John V. Clinnin and Ernest Hoover, members of the Illinois State Civil Service Commission, Edward J. Barrett, Auditor of Public Accounts, and John C. Martin, State Treasurer, commanding them to expunge certain records so as to show that she was an employee of the State in the classified civil service as Food Chemist in the Department of Agriculture, and for certain other relief. The respondents filed a special and limited appearance contesting the jurisdiction of the superior court of Cook county, where the suit was brought, on the ground that the suit should have been

brought in the circuit court of Sangamon county, and moved the court to quash the service of summons. The motion was denied, the respondents elected to stand on their limited appearance, judgment was entered awarding the writ of mandamus as prayed for, and the respondents appeal.

We think the special and limited appearance of the respondents properly raised the question whether the superior court of Cook county had jurisdiction. *Nicholes v. People,* 165 Ill. 502; *Louisville & N. R. Co. v. Industrial Board,* 282 Ill. 136.

An action against a public official for acts of omission or commission in the conduct of his office was transitory at common law. 40 Cyc. 87. Both parties seem to take the position that the venue of the instant case is determined by the provisions of sec. 7 of the Civil Practice Act, par. 135, ch. 110, Ill. State Bar Stats. The pertinent portion of that section provides that "every civil service action shall be commenced in the county where one or more defendants reside or in which the transaction or some part thereof occurred out of which the cause of action arose." And counsel for respondents contend that "Neither the transaction nor some part thereof occurred in Cook County out of which the cause of action arose so the court did not have jurisdiction"; and further, that all necessary and proper parties, viz., McLaughlin, Director of Agriculture, Barrett, Auditor of Public Accounts, and Stelle, who has succeeded Martin as State Treasurer, are all located at Springfield in Sangamon county.

The record discloses that the respondents Lepman and Clinnin were served by the sheriff of Cook county; Hoover by the sheriff of Christian county; McLaughlin, Barrett and Martin by the sheriff of Sangamon county, and Lancaster by the sheriff of Adams county.

Counsel for the respondents say that the basis for petitioner's suit is predicated on the charge that her

title as "Food Chemist" was wrongfully changed to "Chemist in Charge of the Springfield Laboratory"; that this was done in respondent McLaughlin's office at Springfield, and therefore no part of the transaction (which is the basis for plaintiff's suit) occurred in Cook county. And the argument appears to be that the petitioner has not brought herself within the provision of sec. 7 of the Civil Practice Act above quoted. Counsel for respondents further say that respondent Lepman, who is "Superintendent of Foods and Dairies," is employed in the Chicago office of the Department of Agriculture; that nowhere in the statute is such superintendent given any specific powers or duties, but that he is merely a subordinate employed in the Department of Agriculture, and acts under the direction of the Director of Agriculture, McLaughlin, and therefore Lepman was not a necessary or proper party.

It is further argued that respondent Clinnin, who together with Lepman was served by the sheriff of Cook county (and who it seems to be conceded resides in Cook county) is not being proceeded against individually, but in his capacity as a member of the Civil Service Commission, which is located at Springfield as required by sec. 17 of the Civil Service Act, ch. 126a.

Sec. 3 of ch. 24a creates the Department of Agriculture. Sec. 4 provides that each department shall have an officer at its head who shall be known as a Director, who shall execute the powers and discharge the duties fixed by law in his department. Sec. 5, in addition to the director of the department, creates in the Agriculture Department the position of "Superintendent of Foods and Dairies," and the section provides that the Superintendent shall "be under the direction, supervision and control of the Director . . . and shall perform such duties as such Director shall prescribe." And by sec. 17 of the Act it is provided that "Each department shall maintain a central office in the capitol

building at Springfield, in rooms provided by the Secretary of State. The director of each department may, in his discretion and with the approval of the Governor, establish and maintain, at places other than the seat of government, branch offices for the conduct of any one or more functions of his department.'' By section 17 of the State Civil Service Law, ch. 126a, it is provided that ''The Secretary of State shall cause suitable rooms to be provided for said commission at the capitol at Springfield. It shall be the duty of the officers of the State, or of any civil division thereof, at any place where examinations are directed by the commission, or by its rules to be held, to allow the reasonable use of public buildings and rooms'' for holding such examinations, and that the commission shall meet at Springfield at least once in each calendar month except August.

Three persons may be appointed by the Governor as Civil Service Commissioners (sec. 1, ch. 126a). The Auditor of Public Accounts and the State Treasurer are constitutional officers who are required by sec. 1 of Article 5 of the Constitution, to reside at the seat of government during their term of office and to keep public records, books and papers, and to perform such duties as may be prescribed by law.

The petition alleges that the respondent, McLaughlin, as Director of Agriculture, has assigned to respondent Lepman the duty of preparing and signing pay rolls for petitioner's salary, which pay rolls must be approved by McLaughlin. Lepman is in charge of a branch office in Chicago.

Sec. 31 of the State Civil Service Law, ch. 126a (Ill. State Bar Stats.) provides that ''It shall be unlawful for the Auditor or any other fiscal officer of the State to draw, sign or issue . . . any warrant on the Treasurer, . . . to pay any salary or compensation to any officer, clerk or other person in the classified service

of the State, unless on an estimate, pay roll or account for such salary or compensation, containing the names of the persons to be paid and a statement of the amount to be paid, and the matter on account of which the same is to be paid, shall be filed with him, bearing the certificate of the State Civil Service Commission that the persons named in such estimate, pay roll or account, have been appointed or employed, . . . in pursuance of this act.''

The petition alleged that Lepman was required to make out the pay rolls for petitioner's salary and prayed that the defendants be commanded to make out new vouchers for paying the petitioner her salary for certain months. This could not legally be done until and unless the pay roll was made out and then certified to by the Civil Service Commission.

We think all the parties were proper and necessary parties to the proceeding.

From the provisions of the statute above mentioned it clearly appears that some of the duties required of the Agricultural Department are authorized to be performed in such places in the State as the director of the department may specify; and it appears that a branch office is maintained in Chicago, where some of the duties of his department are performed. It also appears that the duties of the Civil Service Commissioners are not performed solely in Sangamon county but they may go to any part of the State to hold examinations and perform other duties required by law.

In these circumstances, taking into consideration also the fact that two of the defendants reside in Cook county, the action might properly be maintained in the superior court of Cook county, because sec. 7 of the Civil Practice Act provides that a civil action may be commenced where one or more of the ''defendants reside.''

In support of respondents' position the cases of *People ex rel. Town of Brighton v. Williams,* 129 N. Y. S.

457; *State of Florida v. Parks,* 94 Fla. 91; and *Mason v. Willers, Secretary of State,* 7 Hun 23, are cited.

The *Williams* case was a petition for mandamus to compel the State Comptroller to approve an assessment pay roll of certain lands as the statute required. The suit was brought in Franklin county where the land was located, but the court held the action would not lie but should have been instituted in Albany county, in which the capital of the State was located. The court there said (p. 459): "The ownership of the lands in question is not involved in this proceeding. The statute requires the Comptroller to approve all the rolls, but only after a hearing of the assessors and the forest, fish, and game commission, if they should so desire. It is clear that that hearing is to be had not in Franklin County but in Albany, the official home of the Comptroller. It is clear that his approval is there to be made. . . . All the acts which he is required by this writ of mandamus to perform are there to be performed, and, if any alternative writ were required to be issued the issue made thereby would be triable in Albany county. Moreover, if the matter be one of doubt, that doubt should be resolved in favor of the State, to the end that public business may be expedited."

In the *Parks* case (94 Fla. 91) a writ of mandamus was sought to command the State board of law examiners to receive the application of one Baker to permit him to take the examination of the board and to issue to him a license if he should successfully pass the examination. The court held that such action could only be brought in the county where the capital city was located. The court there said that the duties of the respondents in that case were required to be performed at the capital city and not elsewhere, and said (p. 94): "An action by mandamus against the Board to coerce the performance of those duties is therefore not transitory, as was the case in *King v. Kentucky*

*Board of Pharmacy,* 162 S. W. 561, where no place was fixed by law for the meetings of that Board or for the performance of its official duties.'' We think that case is not in point. The civil service commissioner may perform duties throughout the State as may be determined by officials of the Department of Agriculture, and section 7 of the Civil Practice Act provides that an action may be brought where a defendant or some of them reside. .

In the *Willers* case (7 Hun 23) the petition for mandamus was filed against the Secretary of State in Kings county to require him to file in his office at Albany a certain certificate whereby the petitioners proposed to create a corporation, and it was held that under the statute of New York this action would lie only in the courts of Albany county where the office of the Secretary of State was by law located.

Since the enactment of the Civil Practice Act in New York in 1920, suits for the reinstatement of State employees have been brought in counties other than Albany county where the capital was situated (*Davis v. Seyer,* 200 N. Y. S. 135; *Williams v. Pyrke,* 252 N. Y. S. 801; *Whaley v. Perkins,* 248 N. Y. S. 65) although the point in question was not discussed.

Similarly, an action for mandamus was brought in the superior court of Cook county seeking reinstatement of certain State civil service employees in *People v. Burdett,* 283 Ill. 124. Burdett was a civil service commissioner and resided in Cook county. So also mandamus actions have been brought against the Department of Registration in Cook county. *Bodenweiser v. Dept. of Registration,* 347 Ill. 115; *Schireson v. Walsh,* 354 Ill. 40; and a case involving the sales tax of this State was brought against the Auditor of Public Accounts in the circuit court of Madison county (*Winter v. Barrett,* 352 Ill. 441); and a case against the Director of the Department of Finance was brought in

the circuit court of Kane county. *Chicago Motor Club v. Kinney,* 329 Ill. 120. In each of these cases the venue was fixed by the residence of one of the defendants.

In *King v. Kentucky Board of Pharmacy,* 157 Ky. 52, 162 S. W. 561, a writ of mandamus against the State Board of Pharmacy and its members to compel the issuance of a certificate to permit one to practice his profession in the State was held to be a transitory action by virtue of a provision of the statute which required actions whose venue was not established by other sections of the statute, to be brought in the county where the defendants or one of them resided or was summoned. The suit was brought in Jefferson county, while Franklin county was the seat of the State capitol. The court there said (p. 562): "There is no special provision of law as to the venue of actions against, or service of process upon, the Kentucky Board of Pharmacy. . . . This action is a transitory one under Section 78 of the Civil Code and may be brought in any county where process is executed upon the members of the board or any one or more of them. . . .

"It will be noticed that this action is brought, not for the enforcement of contractual rights and obligations, but to coerce the performance of ministerial duties. It is an action against the individuals comprising the Kentucky Board of Pharmacy; its object being to require the individual officials upon whom devolves the performance of a duty, to execute the same. And these officers must be sued by name in order that the court may determine whether or not they are the proper persons to perform such duty, and in order that it may command them to perform it."

In *Gregory v. McInnis,* 140 S. C. 52, 134 S. E. 527, the Supreme Court of South Carolina held that an action to compel the State Board of Veterinary Examiners to issue a license would lie in the county where the cause of action arose although none of the members

of the board resided in the county where the suit was brought.

In *R. R. Commission v. Palmer Hardware Co.*, 124 Ga. 633, an equitable petition was brought against the road commissioners of the State and certain railroad companies claiming that the commissioners had fixed freight rates which were discriminatory. None of the commissioners lived in Chatham county in which the suit was instituted, but in other counties of the State. The court there said (pp. 647, 648) : ''If this equitable proceeding cannot properly be brought in Chatham county, in what county should it be brought? It is urged by counsel for plaintiffs in error that it must be brought in Fulton county [where the capital of the State is located]. This argument is based upon the Civil Code, sec. 2186, which among other things declares that 'the office of said commissioners shall be kept at Atlanta.' It is argued that this creates an official residence or domicile where suit must be brought. All suits must be brought against some person, either natural or artificial. . . . Only a person can be a party. In fixing the venue of a suit against the railroad commissioners of this State, it must be determined whether the commission as a body is a corporation, and therefore an artificial person which can be made a party, or whether it is simply an aggregate body composed of the individual commissioners, and they are the parties to the action. The law of this State nowhere declares the commission as such to be a corporation, or to have power to sue or be sued in that name. On the contrary, it more frequently speaks of the commissioners than of the commission. . . . A mere declaration that the office of the commissioners shall be kept at Atlanta does not create a corporation. . . . The commission not being a body corporate, if the venue of a suit is to be fixed with reference to the commissioners, it follows, under the constitutional pro-

vision already quoted, that it would be in the county where one or more of the commissioners reside." The holding in this case was followed in *State Highway Department of Ga. v. Marks,* 167 Ga. 397, which was a suit brought against the highway commissioners.

In view of the provision of section 7 of our Civil Practice Act and under the other sections of our statutes and authorities above referred to, we hold that since two of the necessary and proper parties resided in Cook county, the superior court of Cook county had jurisdiction; therefore the judgment appealed from is affirmed.

*Judgment affirmed.*

McSurely, P. J., and Matchett, J., concur.